We're going to call 515-0057. It's not near regular this week. Are you from here? Yes. Oh, so you didn't drop it. Okay, good. You may begin, did I say the number I think? Yeah. 515-0057. Yes, now you may begin when ready. May it please the Court? Yes, ma'am. Assistant Appellate Defender In Sun Ra on behalf of Michael Shores. There are two issues on appeal. The State concedes a pre-sentence credit issue, so the focus today will be an argument one. Whether Mr. Shores' waiver of counsel was knowing, intelligent, and voluntary, or the trial court failed to strictly or substantially comply with Illinois Supreme Court Rule 401A in three ways. The trial court never acknowledged Mr. Shores and the nature of the charge in the maximum and the minimum of count two, which is a conspiracy to commit theft on the record. The trial court also failed to ensure that Mr. Shores understood his right to appointed counsel or a public defender. The trial court failed to make certain that Mr. Shores understood the nature of count one, which is the attempt theft charge, which he was ultimately convicted of. Your Honors, the constitutional right to counsel, especially for a criminal defendant, is the cornerstone of the criminal justice system. Because of the gravity of such a waiver, each defendant, when waiving his right to counsel, must understand the importance and all the consequences of his decision. And a waiver of a defendant's constitutional rights to counsel must not be lightly deemed waived or pursued. Rather, this Court must indulge in every reasonable presumption against waiver. The waiver must be clear and unequivocal. It must be knowing, intelligent, and voluntary. And here, it's most notable that Mr. Shores never said, I don't want an attorney. I want to go pro se. I want to represent myself. I don't want a public defender. Because the trial court's lack of compliance strictly or substantially to comply with Rule 401, where Supreme Court rules are not merely suggestions but carry the force of law. Yes, Your Honor. Next question. Was there a written waiver? No, Your Honor. They're not merely suggestions but carry the force of law. Mr. Shores respectfully requests that this Court vacate his conviction. And to begin, we start with Mr. Shores' understanding of his right to appointed counsel or a public defender. Your Honor, there are four pretrial hearings here. The first one, there's no court reporter, so there's no transcript. There are two following hearings where there's a notice of transcript not forthcoming in the record. So we have one pretrial transcript. And then we have the bench trial transcript and post trial transcripts. So we have this one pretrial transcript from July 9, 2014, where Mr. Shores tells the court, I've been looking, but I can't seem to find one who will take my bond money, and all I have is no bond money. The trial court tells him, Well, do you have eyes? Do you have a phone book? Why don't you check there? And Mr. Shores says, Well, I can look in the phone book if I have to. So we have a trial court here and a criminal defendant who has no legal sophistication, who's before the court. He tells the court that I don't have money. I'm actually on a drying unemployment, and all I have is my bond. The trial court doesn't take this additional step to just ask him, Hey, do you want an appointed attorney or do you want a public defender? Nowhere on the record does it say he never wanted a public defender. All we have is a docket sheet which just says he's given time to find an attorney, and here he says no one will take it for my $1,000 worth of bond because he has a warrant fee there. Obviously, we know there's a 10 percent bond fee that gets attached there. If he loses and he wants to go to trial, that's for sure, and he loses, there's going to be court costs. So a private attorney had to take way less than the $1,000 that he had posted, and once again, he never stated I don't want an attorney. Rather, he says I'll try to look in the phone book, and right before his bench trial, he says I have no choice in that you never advised me that I have the right to a public defender. So I don't know if there's a difference or if he knew the difference of an appointed attorney versus a public defender, but what we have on the transcript is you have the right to an appointed attorney, and here he says I was never advised of my right to a public defender when the trial court asked him. Further, I think it's also notable that right after the bench trial at the post-trial hearing, the transcript shows how easy it would have been for the trial court to just ask him do you want a public defender because he's ultimately given a public defender. I think the difference between his case and all the other cases that are cited, that he was never given an attorney in the first place. So he was never given an attorney. He was never completely saying I don't want an attorney.  Another issue that Mr. Shores raised was his understanding of the nature of count one, which was the attempt at charge. I think throughout the bench trial in the record, it shows that he didn't understand what he was charged with. He asked repeatedly, I don't understand. How can I be charged with a crime? Why am I on trial if nothing was damaged, if no one was hurt, if nothing was taken? And I think the trial court tries to explain what the attempt at charge meant, but that was after the trial. That was after he was found guilty of it. So at this point, the trial court didn't give him an attorney even though he said he couldn't afford one. And then he convicted him of a crime that he didn't understand. Well, I guess I take exception with that because what I gathered from the back and forth between the judge and the defendant was that he just basically refused to accept that there could be a crime charged when you were just trying to steal something and didn't get the job done. That's kind of what I took from it. I took it a little differently. So the trial court here, after that back and forth, I think it means a lot that the trial court actually tried to explain it to him. I think ultimately the trial court was like, I'm not going to argue with you anymore about this, but I think the trial court took that initial step when he kept kind of expressing his frustration that he didn't understand to explain this to him, which meant that the trial court and the transcript show didn't explain this to him prior to him going to trial, prior to his conviction, which is the problem here because he had to be admonished of what he was charged with, the nature of the charges, the maximum, the minimum. All that stuff had to be admonished or he had to be aware of that before he went to trial, before he was convicted. I understand. In fact, the maximum and minimum, you're actually only arguing about the second count, correct? The maximum and minimum is only the second count. And that was dismissed. So how could that affect him? But, Your Honor, we go back to the fact that he wasn't given an attorney, and by the luck of the draw, he was found not guilty of one of the charges. But the prejudice still is that he wasn't given an attorney for a crime which he could go to jail for for up to 364 days, and ultimately he was convicted of one of the charges. So the prejudice here is still there. He was still convicted. But it's not there with respect to him not understanding the sentencing of the second count. Well, Your Honor, he still had to go to trial for that, right? So he didn't know the maximum, minimum, the nature of the charges. He still went to trial for it. He still had to defend it, although he didn't know, you know, how to. His lack of real sophistication is clear from the record where he didn't know that he could look at discovery, so he got discovery during the trial while in the cabinet. I think there's no question about his lack of sophistication. Well, so he went to trial for two counts that he wasn't aware of the nature of the charges, and for the second count he didn't know the maximum, minimum sentence. But ultimately, luck of the draw, he was found guilty of one but not the other. So I think the prejudice is still clear. And even if it isn't that issue, there are two other issues of the nature of the attempt theft charge and the fact that he wasn't completely aware of his right to appoint a counsel or a public defender. So unless there's any other questions, Mr. Schor has asked that this court reverse his conviction outright. Thank you. Thank you. Ms. Fox, you're a student? I am, Your Honor. Where at? I'm a third-year law student at the University of Illinois. Welcome. Thank you. Okay. May it please the Court. Counsel. The trial court substantially complied with Rule 401 because the defendant's waiver was made knowingly and voluntarily. During pretrial proceedings, the trial court has to grapple with two important constitutional rights, the right to a lawyer and the right to proceed without one. In this case, the record is clear that the defendant knew of his right to appointed counsel, but he didn't want one. He wanted to hire his own lawyer. And so the court, in recognition of his constitutional right, granted the defendant ample time and opportunity to hire a lawyer. Yet after months, the defendant still did not have a lawyer. And so the defendant, knowing he could have one appointed for him, chose to proceed pro se. And he made this choice knowingly and voluntarily. Therefore, we ask that this Court affirm the trial court's decision. Where in the record are we going to find that he made that knowingly and voluntarily? Throughout the record, Your Honor, but specifically on the pretrial proceeding on July 9, 2014. First, defense counsel, I would like to talk about the defendant's knowledge of his right to appointed counsel. Defense counsel argues that the court did not substantially admonish him regarding his right to appointed counsel. But during the pretrial proceeding on July 9, 2014, the court stated, Mr. Shores, you have a right to be represented by a lawyer. If you can't afford one, you have a right to request that one be appointed for you. Do you understand that? To which the defendant replied, yes. This is a clear admonishment regarding the defendant's right to appointed counsel. The court clearly told the defendant his right, and the defendant told the court that he understood. The defendant wanted to believe that he didn't understand his right to appointed counsel, and the court failed to make sure he understood this. During the pretrial proceeding on August 26, 2014, the defendant even went so far as to say that he was never advised of his right to appointed counsel. But clearly he was advised this on July 9. The record is clear. Was August 26 the date of the trial? Yes, Your Honor. There was a proceeding before the bench trial, which is what I'm referring to. Wasn't the court saying to him he has a right to be represented by counsel? Yes. On August 26? On both July 9 and August 26. But didn't he also say, I think it's a little late now? Yes, Your Honor. The judge did say that. However, the judge then asked, how do you want to proceed? And this, you know, gives the judge the benefit of the doubt, that if the defendant had said, I would like an appointed attorney, the court would have granted him time to get a public defender and give the public defender time to review. But at this point, the defendant replied, a bench trial. So he did not want an appointed attorney. He wanted to proceed with the trial then, pro se. So the record is clear. The defendant knew of his right to appointed counsel, but he wanted to hire his own lawyer. While we don't have transcripts from every pretrial proceeding, the docket clearly indicates that the defendant was given multiple continuances to hire a lawyer. The trial court was walking the fine line between the defendant's right to appointed attorney and his right to proceed pro se or hire the lawyer of his choice. When the defendant told the court that he couldn't afford to hire an attorney, the court said, you have the right to have one appointed for you. But even after acknowledging this right, the defendant continued to talk about hiring a lawyer. He obviously did not want one appointed for him. And so the court, understanding this was the defendant's preference, helped the defendant navigate his rights by granting him continuances and giving him ideas on how to find local attorneys. On the day of the trial, the defendant lied to the court and said that he was never advised of his right to appointed counsel. But even after acknowledging this right, he still did not ask for appointed counsel. The court didn't force the defendant to have appointed counsel because he still had a right to proceed pro se. The defendant told the court he had no choice but to proceed pro se, but this is because he had already rejected the idea of having appointed counsel and he claims he could not afford to hire the attorney of his choice. But still the defendant made a choice.  Well, what about Rule 401, though? Before you can allow a waiver, you have to make sure certain things, nature of the charge, maximum and minimum. I understand right to counsel. What about the first two? Now, in the nature of the charge, Your Honor, defense counsel argues that the court did not substantially, the court did not make sure the defendant understood the nature of count one, the nature of attempts back to charge. However, the trial court did describe this charge during the pretrial proceeding on July 9th when it stated the offense in a statute that the defendant violated, falling with, quote, you performed a substantial step toward the commission of that offense and that you knownly entered on the property of Carol Askin, end quote. And it contained the facts of the case that supported that charge. The state concedes that this isn't terribly detailed. However, courts look at several factors when reviewing the level of detail required in admonishments, such as the complexity of the charge as well as the defendant's familiarity with the criminal justice system, such as with his criminal history. Now, in this case, the defendant has a lengthy criminal history, so he's familiar with the system. And second, he was charged with a simple crime, attempt theft. He knew that he was caught trying to steal gas. And the word attempt is used so often colloquially that this court cannot believe that he did not understand what the nature of the attempt theft charge meant beyond what the court had already described. And as to the nature of the conspiracy charge, defense counsel argues that the court failed to substantially comply when it failed to admonish the nature of the conspiracy charge as well as the minimum and maximum sentences of that charge. The state does concede that the court did fail to admonish the nature of the conspiracy charge as well as the minimum sentence. However, it did admonish regarding the maximum sentence on July 9th as well as August 26th when it stated, if you're found guilty of either of those charges, and here the court is referring to attempt theft and conspiracy, you could be fined up to $2,500, sentenced up to 364 days in the county jail. Do you understand that, sir? The defendant replied, yes. It is also well established that substantial compliance can still be found without a court's admonishment of the minimum sentence. Moreover, according to People v. Wright, the court's lack of admonishment regarding the minimum sentence and the nature of the charge should not preclude substantial compliance because it did not ultimately prejudice the defendant. Nowhere does the defendant claim that knowing the minimum sentence or the nature of the conspiracy charge would have reasonably changed his decision to proceed pro se. The defendant chose to proceed pro se because he did not want appointed counsel and he claims he could not find an attorney to hire. He still knew the maximum sentence he was facing, so there was no prejudice at that time. And also, he was found not guilty of the conspiracy charge. The defendant is asking you to evaluate form over substance and drag a misdemeanor case on for years when he knowingly and voluntarily chose to proceed pro se. The trial court substantially complied with these, and therefore we ask that this court affirm the trial court's decision. Any more questions? No, thank you very much. Ms. Snow, do you have anything you want to say? No, it's your time. I would actually draw the court's attention to page 73 of the record and 125 of the record. The court says, are you able to afford an attorney? He says, not right now. And then the court immediately goes to, have you talked to anybody? And then if you look at page 125, this is after the bench trial. Mr. Shores filed a couple of pro se post-trial motions saying, I didn't have the legal knowledge. I didn't know. I don't have the money. I cannot hire an attorney. So at this point, the trial court asked Mr. Shores, I don't understand what your post-trial motion is about. Do you want an attorney? And he's like, yes, I need an attorney. I have to pay rent. I have to pay child support. And the court immediately gives him an attorney here. And all of his co-defendants also had attorneys, and the court notes that. Yeah, your co-defendants, Amanda and I can't remember the other one right now, but they had attorneys. And I asked this court to kind of use a common sense, logical approach here. He didn't have any legal sophistication, and there's no doubt about that. He had legal sophistication. He had been in the system before. He had been in the system. On the job experience. That might be true, Your Honor, but every case is different. And here, he said that he couldn't afford one. All the trial court had to do was ask him, do you want an attorney? Do you need an attorney? Do you want me to appoint one for you? Do you need a public defender? And he could have said yes or no. But here, the court didn't take that extra step. And the court is presumed to know the law. The court is presumed to know Rule 401A. And I don't think that should happen. But you have people versus rights. It's a substantial compliance with the rules. That's right, Your Honor. So how is your client prejudiced? He went to trial without an attorney. He faced a year in jail. And he was convicted, ultimately, because he didn't have that legal sophistication that I keep coming back to. He didn't know how to subpoena witnesses, and that's clear from the record. He didn't know how to get discovery. That's clear from the record. So I think the prejudice here is clear. Mr. Sharns asked that this court reverse his conviction outright. Thank you, Your Honor. Thank you. I believe this matter will be taken under advisement and a disposition will be issued in due course. That completes the morning docket.